## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 2:14-cv-00821-ALM-TPK |
| v. | ) | |
| | ) | |
| DAVID RICUPERO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT'S OPPOSITION TO
### PLAINTIFF'S MOTION TO EXTEND TIME FOR DISCOVERY

Plaintiff's dilatory approach to discovery and pleading practice has not wavered. This is the second of deadlines chosen by the Plaintiff that it has missed, and second for which it has belatedly filed for an extension.[1]

## I. RELEVANT FACTUAL & PROCEDURAL HISTORY

On September 30, 2014, Plaintiff served Defendant with its complaint alleging direct copyright infringement. *See* Doc. 5 ¶¶ 30-35. Defendant answered on October 21, 2014 and has maintained his innocence at all times. *See e.g.,* Doc. 5 p. 5. ("Defendant has not engaged in or contributed to any infringement of the copyrights alleged.")

On November 25, 2014, Plaintiff emailed Defendant a proposed 26(f) report for his review and approval. Defendant's edits were minor, with the discovery dates remaining as proposed by the Plaintiff. Said report was filed with the Court the following day.

On December 3, 2014, the Court held a preliminary pretrial conference wherein counsel for the parties appeared telephonically. The discovery dates as proposed by the Plaintiff were approved. Plaintiff voiced no concern about meeting those dates during the conference.

On January 3, 2015, Plaintiff served Defendant its initial disclosures, interrogatories and production requests. Defendant responded to Plaintiff's discovery requests on January 23, 2015.[2]

---

[1] *See, e.g.* Doc. 27 (Defendant's Opposition to Plaintiff's Motion for Extension of Time within which to Serve Expert Reports); Doc. 30-1 (identifying Plaintiff "extension pleading" practice and providing a partial list of expert report extensions sought by Plaintiff).

[2] Plaintiff's discovery requests were dated January 2, 2015, but not served until the following day. Defendant responded to Plaintiff's requests on January 23, 2015; not February 3, 2015 [Doc. 27 p. 4], nor January 30, 2015 [Doc. 36 p. 1 and Doc. 47 p. 3].

Nearly two weeks later, on February, 5, 2015 Plaintiff sent Defendant a letter of deficiencies stating "it is important that we resolve the issues discussed above as soon as possible." Defendant's counsel responded that same day, providing his home and cell numbers stating he was available to talk at anytime. Plaintiff also requested additional time to complete its expert report. Defendant immediately voiced his concerns and raised several questions regarding the extension. No response from the Plaintiff was forthcoming.

On February 10, 2015, Plaintiff called Defendant on his cell. During the ten minute conversation, Defendant asked counsel 1) given the volume of litigation Plaintiff practices, if Plaintiff already had a protective order for forensic searches in place; and 2) how should the Defendant submit his hard drive to the Plaintiff for inspection. Plaintiff's counsel did not know the answer to either question, but "would ask." Given the lack of knowledge regarding Plaintiff's methods that its counsel showed, Defendant offered to reduce his responses to writing.

On February 12, 2015, Defendant sent his reply to Plaintiff's objections.

On February 13, 2015, Defendant drafted a protective order since no response was forthcoming from the Plaintiff regarding an acceptable template.

On February 17, 2015, Plaintiff responded to the Defendant's protective order with a draft of its own. Plaintiff's draft sought to place the cost and logistics of imaging the hard drive on the Defendant and sought access to material outside the scope of its claims. Over the next few days counsel spoke via email regarding their respective expert's technical issues with the draft order.

**The deadline for identifying experts was February, 21, 2015.**

On February 22, 2015, Plaintiff emailed Defendant "to confirm that per our telephone conversation on Friday [February 20], Defendant granted Plaintiff an extension to serve its discovery responses to this Thursday (2/26/2015). Both my client and I appreciate the additional time." *See* Doc. 47-3 p. 5.

On February 23, 2015, Plaintiff identified its expert, provided "a partial expert witness report" and moved for an extension of time. *See* Docs. 24 & 25. That same day, Defendant incorporated comments from Plaintiff and sent another draft protective order.

On March 5, 2015, two weeks from its delivery, Defendant received a heavily redlined response to his most recent draft protective order from the Plaintiff.

On March 6, 2015, Defendant filed his opposition to Plaintiff's motion to extend the expert deadline. That same evening at 7:00 PM, Plaintiff emailed Defendant regarding a protective order. *See* Doc. 47-3 p. 9.

On March 30, 2015 at 10:38 PM, Plaintiff emailed Defendant notice of depositions of Defendant's neighbors.[3]

On March 31, 2015, Defendant email Plaintiff to inform him he was in Minneapolis, MN from April 5-10, 2015 conducting depositions in another matter. Undersigned also requested the notices be voluntarily withdrawn and a new mutually agreeable date be set. *See* Doc. 41-1.

On April 1, 2015, Plaintiff filed its motion to compel. *See* Doc. 36.

On April 2, 2015, after receiving no response from the Plaintiff, undersigned once again inquired if the Plaintiff was willing to confer on mutually agreeable dates. *See* Doc. 41-2. That afternoon, Plaintiff responded stating the depositions noticed for April 10 would continue as scheduled. No inquiry was made into Defendant's availability to be deposed. *See* Doc. 41-3. That same evening at 10:41 PM, Plaintiff emailed its notice of deposition for the Defendant on April 15 to the undersigned. *See* Doc. 41-3.

On April 10, 2015, undersigned attempted to discern via email whether Plaintiff intended to proceed with the scheduled depositions or not.

On April 13, 2015, undersigned contacted the reporting service, confirmed that the April 10 depositions had occurred, and was told the April 15 deposition was canceled.

**The deadline for discovery was April 15, 2015.** That same evening, Plaintiff moved for an extension of the discovery deadline. *See* Doc. 47.

## A.  Plaintiff's Litigation Practices Prevents Any Meaningful Dialogue.

Plaintiff's continuing reluctance to speak with Defendant on the phone to resolve issues has further compounded delays in this matter as emails often take days, if not weeks, to be answered by the Plaintiff—if at all. *See* Doc. 27 n.4. And phone calls go unreturned altogether. Plaintiff contends that this is to avoid any intentional or inadvertent miscommunications, though it's unclear on whose part.

---

[3] The deposition dates were made without first conferring with counsel and with less than 14 days notice. *See* Doc. 39. *See also,* Fed.R.Civ.P. 30(b)(1); Fed.R.Civ.P. 32(a)(5)(A).

However, the true reason is more subtle. There is every indication that Plaintiff's counsel in this matter is not the one curating the litigation. Rather, it has been evidenced in related matters that all pleadings, substantive communications with opposing counsel and "marching orders" are the Florida law firm of Lipscomb, Eisenberg & Baker ("LEB"), and not the attorney of record. *See Malibu Media v. John Doe*, No. 13-cv-06252, ECF No. 14-1 (E.D. Pa. Aug. 4, 2014) (email correspondence between Plaintiff's Pennsylvania counsel, Chis Fiore, and defendant's attorney, Darth Newman. Wherein, Fiore merely forwards documents to and from LEB attorney Jessica Fernandez.); *Malibu Media v. John Doe*, No. 14-cv-00693, ECF No. 17 (N.D. Ill. April 6, 2014) (Plaintiff's status report filed by its Illinois counsel, Mary Schulz. Metadata shows LEB attorney Emilie Kennedy as the author.); *Malibu Media, LLC v. John Does 1-14*, No. 12-cv-02084, ECF No. 34 (E.D. Pa. Nov. 15, 2012) (Wherein Keith Lipscomb states that a filing bearing Mr. Fiore's signature was in fact drafted by himself and filed using Mr. Fiore's ECF username and password).

Such an arrangement would account for delays in Plaintiff's responses, numerous Friday after-hour filings and why everything must be done via email as it makes it simpler to forward to LEB for a response. It is also borne out by undersigned's conversation with Veritext, the reporting service Plaintiff used for its depositions, who identified Jazmin Viera of LEB as the individual who set the deposition dates. And it is laid to rest with a document filed in *Malibu Media v. Doe*, No. 14-cv-00493-TSB, ECF No. 21-9 (S.D. Ohio March 20, 2015), wherein, LEB attorney Emilie Kennedy is identified as the author of the amended complaint and LEB paralegal Jennifer Deleon directs Plaintiff's counsel in this matter to "[p]lease file … as usual."

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 16(b)(4) states "A schedule may be modified only for good cause and with the judge's consent." The party seeking modification of the case schedule has the "obligation to demonstrate 'good cause' for failing to comply with the district court's scheduling order." *Pittman ex rel. Sykes v. Franklin*, 282 F. App'x 418, 425 n.5 (6th Cir. 2008). In determining whether good cause exists, the primary consideration "is the moving party's diligence in attempting to meet the case management order's requirements." *Commerce Benefits Group, Inc. v. McKesson Corp.*, 326 F. App'x 369, 377 (6th Cir. 2009) (internal quotation marks and citation omitted); *see also Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (quoting 1983 advisory committee notes to Fed.R.Civ.P. 16) ("But a court choosing to modify the schedule upon a showing of good cause, may

do so only 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"). The Court must also consider "potential prejudice to the nonmovant." *Leary*, 349 F.3d at 909. Yet, "[t]he overarching inquiry is whether the moving party was diligent in pursuing discovery." *Davis v. Musick*, No. 11-cv-919, 2013 U.S. Dist. LEXIS 7166, *3 (S.D. Ohio Jan. 17, 2013) (*quoting Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010)).

### III. ARGUMENT

Plaintiff's motion makes two legal arguments: one for good cause, the other for diligence. Yet there is no application of these arguments to the facts; no citation to the record. Instead, the Defendant is left to develop the arguments on the Plaintiff's behalf in order to oppose them. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861 (6th Cir. May 11, 2006).

**A. Plaintiff Fails to Evidence it Diligently Pursued the Litigation, and therefore the Existence of Good Cause as well.**

"The starting point in any Rule 16(b) analysis is the extent to which the moving party can show that, despite exercising due diligence, he or she could not meet the deadline set by the Court." *Amlotte v. O'Hare*, No. 08-cv-1158-TPK, 2010 U.S. Dist. LEXIS 29440, *4-5 (S.D. Ohio March 2, 2010).

> Although the Court has broad discretion to modify its own pretrial orders, it must be remembered that "[a]dherence to reasonable deadlines is … critical to maintaining integrity in court proceedings" and that pretrial scheduling orders are "the essential mechanism for cases becoming trial-ready in an efficient, just, and certain manner." In evaluating whether the party seeking modification of a pretrial scheduling order has demonstrated good cause, the Court is mindful that "[t]he party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines." The focus is primarily upon the diligence of the movant; the absence of prejudice to the opposing party is not equivalent to a showing of good cause. Of course, "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Further, although the primary focus of the inquiry is upon the moving party's diligence, the presence or absence of prejudice to the other party or parties is a factor to be considered. It is with these standards in mind that the instant motion will be decided.

*Shrieve v. DaimlerChrysler Corp.,* No. 05-cv-0446-TPK, 2006 U.S. Dist. LEXIS 35330, *1-2 (S.D. Ohio May 31, 2006) (internal citations omitted). *See also Tdata, Inc. v. Aircraft Tech. Publrs.*, No.

03-cv-0264-TPK, No. 04-cv-1072-TPK, 2006 U.S. Dist. LEXIS 39260, *5-6 (S.D. Ohio June 14, 2006). Thus Plaintiff's lack of diligence also weighs against its lack of good cause.

Again, this is the second of deadlines chosen by the Plaintiff that it has missed, and second for which it has filed for an extension. More so, Plaintiff has established a pattern nationwide of what can best be described as "extension pleading."[4]

Plaintiff contends that Defendant is "stonewalling." [Doc. 47], yet overlooks the effect of its own dilatory pursuit of discovery within the timeline Plaintiff requested, which allotted four months for fact discovery between the December 3, 2014 Rule 26(f) conference and the April 15, 2015 discovery deadline. *See* Doc. 27 pp. 1-3. Like its motion to extend the time for expert reports, Plaintiff asks the Court to blame Defendant for hindering discovery. *See* Doc. 47. But the true culprit remains Plaintiff's unwillingness to pursue discovery promptly, as evidenced by its request for an extension filed at 4:50 PM on the date of the discovery deadline.

> Bentkowski filed his motion for an extension at 7:11 p.m. on the date of the non-expert discovery deadline. He made no effort to conduct discovery in the four and a half months allotted for non-expert discovery and offered no explanation for his lack of diligence. In addition, further discovery would not have affected the summary judgment ruling, and Appellees were responsive to discovery requests. Thus, it was within the district court's discretion to decline to grant Bentkowski additional time for discovery. *See, e.g., Wayne v. Vill. of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994) (holding that district court's denial of defendants' motions to conduct additional discovery after the cut-off date was not an abuse of discretion when they failed to proceed with discovery during the assigned discovery period).

*Bentkowski v. Scene Magazine*, 637 F.3d 689, 696-697 (6th Cir. 2011); *Ginett v. Federal Express Corp.*, No. 97-cv-5481, 1998 U.S. App. LEXIS 27659, *9-10 (6th Cir. 1998) (the district court declined to extend the discovery deadline generally because the trial date was less than three months from the date of the motion).

Nonetheless Plaintiff contends "repeated demands for responsive documents demonstrate its diligence and thus constitutes 'good cause' under Rule 16." *See* Doc. 47 p. 4.

The responsive documents in question are identified in Plaintiff's motion to compel as Request Nos. 2, 6, 8 and 12. *See* Doc. 36 pp. 6-7. As far as the "repeated demands" go, Plaintiff's

---

[4] *Supra*, n.1. *See also* http://fightcopyrighttrolls.com/2014/05/31/malibu-media-foxtrot-five-simple-moves/.

inquiries into these specific requests ceased as of February 12, 2015 when Defendant replied [Ex. A[5]] to Plaintiff's letter of deficiencies. *See* Doc. 47-2.

1. **Requests Nos. 2 & 12 Provide no Basis to Extend Discovery.**

Plaintiff does not explain why extending the discovery deadline is essential to reviewing a receipt for the purchase of an iPhone [Req. No. 2] and lease agreements [Req. No. 12]. *See* Doc. 47 p. 6. Tangentially, Plaintiff makes much to do about Defendant's failure to produce his lease agreements as evidence of his "stonewalling."[6] *Id*. However, Plaintiff knew where Defendant lived as early as September 30, 2014, but waited 4 months before requesting the documents. And when they did, it wasn't from the source most likely to have the documents readily on hand, the lessor, but the 28 year old lessee.

> Significantly, the lease revealed that Defendant had two other individuals residing in his home during the relevant time period. Plaintiff requires additional time to depose these individuals.

*See* Doc. 47 p. 6. Plaintiff fails to state exactly what the significance is here. Plaintiff sued the Defendant for direct infringement of its copyrights. It knew from experience that the Defendant may not be the infringer. It is now using discovery not to prove its claims against the Defendant, but as a fishing expedition to identify other potential defendants. *Shane v. Bunzl Distrib. USA, Inc.*, 200 Fed. App'x. 397, 406-407 (6th Cir. 2006) (the district court denied motion for extended discovery because plaintiff did not adequately support his assertions that additional discovery was likely to produce evidence relevant to his claim).

2. **Request No. 6 Provides no Basis to Extend Discovery.**

Plaintiff contends if its motion to subpoena Time Warner [Doc. 42] is granted it will require time to serve its subpoena and depose Time Warner. Again, Plaintiff provides no explanation for its lack of diligence or why it waited until the week before the discovery deadline before filing its motion.

Plaintiff does proffer three rationales as to why it believes the discovery is necessary though.

a. **Reliability of the ISP's correlating techniques.**

---

[5] Note, Plaintiff has made a point not to include Defendant's reply when presenting the Court with a record of discovery communications. *See e.g.* Doc. 36.

[6] Defendant had agreed to produce these documents yet was unable to find them prior to being told by his landlord he had been subpoenaed for these same documents.

Such testimony removes any doubt that the IP Address used to infringe Plaintiff's works was assigned to any other individual aside from Defendant David Ricupero.

This argument is without merit. One would assume Time Warner took steps to avoid any misidentification at the ISP correlation level when it responded to the initial subpoena. Furthermore, Plaintiff was content enough in Time Warner's initial identification of the Defendant to file suit against him. Further inquiry is unlikely to change this.

### b. Prior notices of infringement.

Plaintiff euphemistically describes this as evidence that Defendant is a persistent BitTorrent user.[7] However, Plaintiff has been repeatedly put on notice that "[t]he alleged infringement of third-party copyrights is is immaterial to Plaintiff's claim that Defendant infringed its copyrighted works." *Malibu Media, LLC v. Tashiro*, No. 13-cv-205, 2013 U.S. Dist. LEXIS 125897, *10 (S.D. Ind. Sept. 4, 2013); *Malibu Media, LLC v. Doe*, No. 13-cv-99, 2013 U.S. Dist. LEXIS 164834, *8-10 (N.D. Ind. Nov. 19, 2013). Thus, any DMCA notices other than those for Plaintiff's works identified in its complaint are not relevant.

### c. Bandwidth usage.

In addition to using BitTorrent, high data usage can result from Skype, streaming, online gaming, software updates, purchasing digital media or having an unsecured wireless router, to name a few. Furthermore, Defendant has identified himself as an app developer, which by necessity would require heavy bandwidth usage. It is not indicative of "serial infringements" or that Defendant knew his connection was being used to infringe the Plaintiff's works nor relevant to proving Defendant infringed.

### 4. Request No. 8 Provides no Basis to Extend Discovery.

As previously relayed to the Plaintiff:

Defendant is an application developer and these folders contain numerous confidential client files as well as files unrelated to Plaintiff's claims. Nor is the request necessary to prove infringement as Defendant's laptop would be the instrument of the infringement. If Plaintiff finds evidence of infringement on Defendant's laptop but no files, then it logical to request access to these folders. Even

---

[7] *See also,* Complaint, Doc. 5 ¶¶ 24-27. Identifying "additional evidence" in its possession for the same purpose. Plaintiff presumably did not attach this "evidence" to its complaint because it has been sanctioned for the same. *Cf. Malibu Media LLC v. Doe*, No. 14-cv-00493-TSB, ECF No. 20 (S.D. Ohio Jan. 21, 2015); *Malibu Media LLC v. Doe*, No. 13-cv-205, 2013 U.S. Dist. LEXIS 128615, *1 (W.D. Wis. Sept. 10, 2013); *Malibu Media, LLC v. Doe*, No. 13-c-536, 2013 U.S. Dist. LEXIS 176701, *4 (E.D. Wis. Dec. 12, 2013).

then, it is unclear why a screenshot of the files and their size would not be sufficient to indicate which, if any, was a movie file.

### 5. Plaintiff's Dilatory Attempts at Securing Defendant's Hard Drive Provide no Basis to Extend Discovery.

Plaintiff let the first month slip by in silence. It served disclosures and discovery requests on January 3, 2015, including a request for Defendant to produce his hard drive *in its entirety. Id.* p. 2; Doc. 30-1 p. 3. Yet by February 10, 2015, when more than half the discovery period had elapsed, Plaintiff still could not tell Defendant *how* to submit his hard drive for inspection or to whom. *See* Doc. 27 p. 2. *See also* Ex. B (Motion in a related matter paralleling the facts here. Plaintiff voluntarily dismissed after the court granted in part and denied in part its motion to extend the discovery date.).

Plaintiff knew the hard drive—the desired discovery—was central to its claims; the discovery period was sufficiently long; Plaintiff was dilatory in conducting discovery; and there is no evidence that Defendant did not timely respond to Plaintiff's discovery requests. *See generally Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1114 (6th Cir. 2001). Where the full period for pretrial discovery has run its course, a party should generally be precluded from reopening discovery after it has closed in a last-ditch attempt to salvage a deficient claim. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1114 (6th Cir. 2001) (*citing Good v. Ohio Edison Co.*, 149 F.3d 413, 422 (6th Cir. 1998)); *Perkins v. Am. Elec. Power Fuel Supply, Inc.,* 246 F.3d 593, 605 (6th Cir. 2001) (holding that the district court did not abuse its discretion in denying a motion for further discovery where the discovery period lasted over a year and where the plaintiff waited until three months before trial to request additional discovery).

### 6. Plaintiff Knowingly Made a False Statement in Support of its Motion.

Lastly, Plaintiff contends Defendant and his counsel "improperly using his pending Motion for Protective Order … as basis" not to attend Defendant's deposition noticed for April 15, 2015. This is demonstrably false.

On April 13, 2015, when undersigned called Veritext to confirm that the April 10 nonparty depositions had taken place, he also inquired as to the status of the Defendant's April 15 deposition. Undersigned was informed that said deposition had been canceled on April 9—six days prior—*by the Plaintiff*. Plaintiff's counsel apparently was not informed of this fact. When he appeared at Veritext's

offices for the Defendant's deposition that morning he was told it had been canceled. Nonetheless, at 4:50 PM that same day, Plaintiff filed the extension request knowing it contained a false statement.

On April 16, 2015, undersigned requested Veritext send an email to both counsel confirming the above. *See* Ex. C. That same day, undersigned then sent counsel an email asking at the very least to withdraw the offending paragraph. *Id.* Undersigned then asked counsel during the April 16 status conference if he had read it, and was told 'not yet.' At 7:30 PM on April 17, 2015, Plaintiff filed an opposition [Doc. 51] to Defendant's—now moot—motion for a protective order, wherein it again knowingly reasserted this false statement. This alone is reason to deny the extension, if not dismiss the entire case with prejudice.

> We also find no abuse of discretion in the district court's decision to strike Bentkowski's first amended complaint as a sanction. The district court found that Bentkowski engaged in six types of sanctionable conduct: (1) failing to provide initial disclosures; **(2) failing to prosecute the action**; (3) failing to comply with the Settlement Conference Order; (4) failing to inform opposing counsel or the court of his counsel's alleged injury; (5) failing to attempt service for almost three months; and **(6) making knowingly false statements to the court in his motion to extend the non-expert discovery cut-off date**. Rule 37(b)(2) permits a court to strike pleadings where a party fails to obey discovery orders. Rule 41(b) permits a court to dismiss an action with prejudice if the plaintiff fails to prosecute or to comply with a court order. The criteria for sanctions under either of these two rules are the same. *Lucien v. Breweur*, 9 F.3d 26, 29 (7th Cir. 1993). A court also has an "inherent power" to "levy sanctions in response to abusive litigation practices." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980).

*Bentkowski v. Scene Magazine*, 637 F.3d 689, 697 (6th Cir. Ohio 2011) (emphases added).

### IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that Plaintiff's Motion to Extend the Time to Complete Discovery be denied.

Dated: April 19, 2015

Respectfully submitted,

*/s/ Jason E. Sweet*

_____
Jason E. Sweet (BBO# 668596)
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: 617-250-8619
Fax: 617-250-8883
Email: jsweet@boothsweet.com
*Pro Hac Vice Appearance*

**CERTIFICATE OF SERVICE**

I hereby certify that on this April 19, 2015 I filed the foregoing document and my supporting affidavit through the Court's CM/ECF system, which will serve the documents on all counsel of record who have consented to electronic service.

*/s/ Jason E. Sweet*