## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) <br> ) |
| Plaintiff, | ) <br> ) Case No.: 2:14-cv-00821-ALM-TPK |
| v. | ) <br> ) |
| DAVID RICUPERO, | ) <br> ) |
| Defendant. | ) <br> ) |

### DEFENDANT'S OPPOSITION TO
### PLAINTIFF'S MOTION TO COMPEL

It may be unfair to expose to scrutiny a pleading patched together from an incomplete factual record, ravaged for material torn out of context or otherwise fabricated. Any careful reader will perceive that Plaintiff is a stranger to evidence bearing upon the case about which it purports to write. But only the parties themselves, who know the sources, will recognize the complex array of devices, the convenient omissions of whatever facts do not fit its overriding thesis, that pervert its pages. Hence the deranged quality of this fairy tale, in which the incidents are made to fit the legend, no matter how intractable the evidence.

### I. RELEVANT FACTUAL & PROCEDURAL HISTORY

On September 30, 2014, Plaintiff served Defendant with its complaint alleging direct copyright infringement. *See* Doc. 5 ¶¶ 30-35. Defendant answered on October 21, 2014 and has maintained his innocence at all times. *See e.g.,* Doc. 5 p. 5. ("Defendant has not engaged in or contributed to any infringement of the copyrights alleged.")

On November 25, 2014, Plaintiff emailed Defendant a proposed 26(f) report for his review and approval. Defendant's edits were minor, with the discovery dates remaining as proposed by the Plaintiff. Said report was filed with the Court the following day. *See* Doc. 11.

On December 3, 2014, the Court held a preliminary pretrial conference wherein counsel for the parties appeared telephonically. The discovery dates as proposed by the Plaintiff were approved. Plaintiff voiced no concern about meeting those dates during the conference.

On January 3, 2015, Plaintiff served Defendant its initial disclosures, interrogatories and production requests. Defendant responded to Plaintiff's discovery requests on January 23, 2015.[1]

Nearly two weeks later, on February, 5, 2015 Plaintiff sent Defendant a letter of deficiencies stating "it is important that we resolve the issues discussed above as soon as possible." *See* Doc. 36-2 p. 6. Defendant's counsel responded that same day, providing his home and cell numbers stating he was available to talk at anytime. *See* Doc. 36-3 p. 1. Plaintiff also requested additional time to complete its expert report. *Id.* Defendant immediately voiced his concerns and raised several questions regarding the extension. *Id*. at p. 2. No response from the Plaintiff was forthcoming.

On February 10, 2015, Plaintiff called Defendant on his cell. During the ten minute conversation, Defendant asked counsel 1) given the volume of litigation Plaintiff practices, if Plaintiff already had a protective order for forensic searches in place; and 2) how should the Defendant submit his hard drive to the Plaintiff for inspection. Plaintiff's counsel did not know the answer to either question, but "would ask." Given the lack of knowledge regarding Plaintiff's methods that its counsel showed, Defendant offered to reduce his responses to writing.

On February 12, 2015, Defendant sent his reply to Plaintiff's objections.

On February 13, 2015, Defendant drafted a protective order since no response was forthcoming from the Plaintiff regarding an acceptable template.

On February 17, 2015, Plaintiff responded to the Defendant's protective order with a draft of its own. Plaintiff's draft sought to place the cost and logistics of imaging the hard drive on the Defendant and sought access to material outside the scope of its claims. Over the next few days counsel spoke via email regarding their respective expert's technical issues with the draft order.

**The deadline for identifying experts was February, 21, 2015.**[2]

On February 22, 2015, Plaintiff emailed Defendant "to confirm that per our telephone conversation on Friday [February 20], Defendant granted Plaintiff an extension to serve its discovery responses to this Thursday (2/26/2015). Both my client and I appreciate the additional time." *See* Doc. 47-3 p. 5.

---

[1] Plaintiff's discovery requests were dated January 2, 2015, but not served until the following day. Defendant responded to Plaintiff's requests on January 23, 2015; not February 3, 2015 [Doc. 27 p. 4], nor January 30, 2015 [Doc. 36 p. 1 and Doc. 47 p. 3] as Plaintiff's scrivener continues to err.

[2] Plaintiff's previous confirmation preempts any future contention otherwise: "In addition, February 21, 2015 is the expert deadline." Doc. 36-3 p. 1.

On February 23, 2015, Plaintiff identified its expert, provided "a partial expert witness report" and moved for an extension of time. *See* Docs. 24 & 25. That same day, Defendant incorporated comments from Plaintiff and sent another draft protective order and offered Plaintiff access to an image of Defendant's hard drive done at the outset of the litigation. *See* Doc. 36-3 p. 6.

On March 5, 2015, two weeks from its delivery, Defendant received a heavily redlined response to his most recent draft protective order from the Plaintiff.

On March 6, 2015, Defendant filed his opposition to Plaintiff's motion to extend the expert deadline. That same evening at 7:00 PM, Plaintiff emailed Defendant regarding a protective order. *See* Doc. 47-3 p. 9.

On March 30, 2015 at 10:38 PM, Plaintiff emailed Defendant notice of depositions of Defendant's neighbors.[3]

On March 31, 2015, Defendant email Plaintiff to inform him he was in Minneapolis, MN from April 5-10, 2015 conducting depositions in another matter. Undersigned also requested the notices be voluntarily withdrawn and a new mutually agreeable date be set. *See* Doc. 41-1.

On April 1, 2015, Plaintiff filed its motion to compel. *See* Doc. 36.

On April 2, 2015, after receiving no response from the Plaintiff, undersigned once again inquired if the Plaintiff was willing to confer on mutually agreeable dates. *See* Doc. 41-2. That afternoon, Plaintiff responded stating the depositions noticed for April 10 would continue as scheduled. No inquiry was made into Defendant's availability to be deposed. *See* Doc. 41-3. That same evening at 10:41 PM, Plaintiff emailed its notice of deposition for the Defendant on April 15 to the undersigned. *See* Doc. 41-3.

On April 10, 2015, undersigned attempted to discern via email whether Plaintiff intended to proceed with the scheduled depositions or not.

On April 13, 2015, undersigned contacted the reporting service, confirmed that the April 10 depositions had occurred, and was told the April 15 deposition was canceled.

**The deadline for discovery was April 15, 2015.** That same evening, Plaintiff moved for an extension of the discovery deadline. *See* Doc. 47.

---

[3] The deposition dates were made without first conferring with counsel and with less than 14 days notice. *See* Doc. 39. *See also*, Fed.R.Civ.P. 30(b)(1); Fed.R.Civ.P. 32(a)(5)(A).

### A. Plaintiff's Litigation Practices Prevents Any Meaningful Dialogue.

Plaintiff's continuing reluctance to speak with Defendant on the phone to resolve issues has further compounded delays in this matter as emails often take days, if not weeks, to be answered by the Plaintiff—if at all. *See* Doc. 27 n.4. More often than not, Defendant's phone calls go unreturned altogether. Plaintiff contends that this is to avoid any intentional or inadvertent miscommunications, though it's unclear on whose part Plaintiff is referring.

However, the true reason is more subtle. There is every indication that Plaintiff's counsel in this matter is not the one curating the litigation. Rather, it has been evidenced in related matters that all pleadings, substantive communications with opposing counsel and "marching orders" are provided by the Florida law firm of Lipscomb, Eisenberg & Baker ("LEB"), and not the attorney of record. *See Malibu Media v. John Doe*, No. 13-cv-06252, ECF No. 14-1 (E.D. Pa. Aug. 4, 2014) (email correspondence between Plaintiff's Pennsylvania counsel, Chis Fiore, and defendant's attorney, Darth Newman. Wherein, Fiore merely forwards documents to and from LEB attorney Jessica Fernandez.); *Malibu Media v. John Doe*, No. 14-cv-00693, ECF No. 17 (N.D. Ill. April 6, 2014) (Plaintiff's status report filed by its Illinois counsel, Mary Schulz. Metadata shows LEB attorney Emilie Kennedy as the author.); *Malibu Media, LLC v. John Does 1-14*, No. 12-cv-02084, ECF No. 34 (E.D. Pa. Nov. 15, 2012) (Wherein Keith Lipscomb states that a filing bearing Mr. Fiore's signature was in fact drafted by himself and filed using Mr. Fiore's ECF username and password).

Such an arrangement would account for delays in Plaintiff's responses, numerous Friday after-hour filings and why everything must be done via email as it makes it simpler to forward to LEB for a response. It is also borne out by undersigned's conversation with Veritext, the reporting service Plaintiff used for its depositions, who identified Jazmin Viera of LEB as the individual who set and canceled the deposition dates. And it is laid to rest with a document filed in *Malibu Media v. Doe*, No. 14-cv-00493-TSB, ECF No. 21-9 (S.D. Ohio March 20, 2015), wherein, LEB attorney Emilie Kennedy is identified as the author of the amended complaint and LEB paralegal Jennifer Deleon directs Plaintiff's counsel in this matter to "[p]lease file … as usual."

### II. STANDARD FOR MOTION TO COMPEL

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1).

Relevance for discovery purposes is extremely broad. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). However, district courts must limit discovery if it determines "the information sought is overly broad or would prove unduly burdensome to produce" [*Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (*citing* Fed.R.Civ.P. 26(b)(2))] or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action[.]" Fed.R.Civ.P. 26(b)(2)(C)(ii). In determining the proper scope of discovery, a district court balances a party's "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle & Mfg.*, 326 Fed. App'x. 900, 907 (6th Cir. 2009) (*quoting Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)); *Surles*, 474 F.3d at 305.

Rule 37 authorizes a motion to compel a non-responsive party to comply with discovery if "a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed.R.Civ.P. 37(a)(3)(B)(iv). The proponent of a motion to compel "bears the initial burden of proving that the information sought is relevant." *Martin v. Select Portfolio Serving Holding Corp.*, No. 05–cv–273, 2006 U.S. Dist. LEXIS 68779, *2 (S.D. Ohio Sept. 25, 2006) *Guild Assocs. v. Bio-Energy (Wash.) LLC*, No. 13-cv-1041, 2014 U.S. Dist. LEXIS 82990, *37 (S.D. Ohio June 18, 2014).

Finally, the party moving to compel discovery must certify that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed.R.Civ.P. 37(a)(1). *See also* S.D. Ohio L.R. 37.2.

Plaintiff has not met these prerequisites.

### III. ARGUMENT

Defendant timely and appropriately objected to Plaintiff's discovery requests as they went well beyond the boundaries of relevance for this litigation. In some instances, due to the broad nature of Plaintiff's discovery requests, it was necessary for Defendant to respond broadly. In each case, though, the breadth of the response was proportional to the breadth of the request. In short, Defendant has in good faith responded to Plaintiff's discovery.[4]

---

[4] Not only has Plaintiff been slow with respect to pursuing discovery, it has also been sluggish to respond to Defendant's discovery requests. Defendant propounded requests for documents and, although it timely responded, to date, the only documents Plaintiff has actually produced are copies of the PCAPs. Plaintiff has yet to respond to Defendant's letter of deficiencies and subsequent follow-up inquiries. Under these conditions, Defendant objects to any extension or compelling of discovery.

Plaintiff spins a one-sided tale of its extra-judicial efforts to resolve its purported discovery disputes. There are, of course, two sides to all stories.

When presenting to the Court a record of the parties' discovery communications, Plaintiff invariably fails to include Defendant's reply to its letter of deficiencies.[5] *See* Ex. A. It would be most helpful if Plaintiff were to provide a complete factual record, especially when there exists an exhibit that has already addressed some, if not most, of Plaintiff's concerns, rather than waiting for Defendant's response memorandum to provide this information to the Court.

Plaintiff's inquiries into the discovery it now seeks to compel, had ceased as of February 12, 2015 when Defendant replied to Plaintiff's letter of deficiencies. Whereupon, Plaintiff sank into silence for months only to jump back up in its omnibus Motion to Compel, seeking to resurrect these issues less than two weeks before the close of fact discovery on April 15, 2015. Indeed, until Plaintiff filed its motion, Defendant was under the impression these specific discovery issues were on their way to resolution.

**A. Plaintiff Seeks to Compel Production that is either Irrelevant, Nonexistent or Already in its Possession.**

   **1. Request No. 2**

Here, Plaintiff seeks to compel a receipt from two years ago for the purchase of an iPhone. *See* Ex. A p. 4. Defendant has requested his credit card statements from that period.[6] *Id.*

   **2. Request No. 6**

Plaintiff requested all communications between the Defendant and his ISP for a 2 year period. *Id.* pp. 6-7. Defendant in turn has requested the documents from his ISP. *Id.* at p. 7. Defendant further notes, on April 4, 2015, Plaintiff moved for leave to subpoena these same documents directly from the ISP. *See* Doc. 42.

   **3. Request No. 8**

In conjunction with its request for Defendant's hard drive, Plaintiff demands unfettered access to all files within his cloud hosting service. Defendant replied in part:

> Plaintiff fails to state a basis for access to Defendant's storage folders as a whole. Defendant is an application developer and these folders contain numerous

---

[5] *See e.g.* Docs. 36 & 47.

[6] A responding party need not review every scrap of paper or search under every rock; rather, it must conduct a diligent search for responsive material. *Treppel v. Biovail*, 233 F.R.D. 363, 374 (S.D. N.Y.) (2006).

> confidential client files as well as files unrelated to Plaintiff's claims. Nor is the request necessary to prove infringement as Defendant's laptop would be the instrument of the infringement. If Plaintiff finds evidence of infringement on Defendant's laptop but no files, then it logical to request access to these folders. Even then, it is unclear why a screenshot of the files and their size would not be sufficient to indicate which, if any, was a movie file.

*See* Ex. A p. 8. Plaintiff's argument still doesn't address these issues, rather it focuses on how many of its works *may* be found on Defendant's Google Drive. *See* Doc. 36 p. 8 ("Indeed, Google Drive *alone* provides 15GB of free storage. 15GB can store as many as one hundred and fifty (150) Malibu Media copyrighted works.").[7]

4. **Request No. 12**

   Here, Plaintiff seeks lease agreements already in its possession. *See* Ex. B.

5. **Interrogatories Nos. 7,8 & 9**

   First, Defendant was named not on the basis of his allegedly infringing activity, but due to his status as subscriber of the IP address utilized. And now that Plaintiff has blindly named him, it seeks discovery to gather evidentiary support not for its contentions, but to implicate third parties. To wit, Plaintiff argues:

   > And, Defendant claims that he is not the infringer. To refute Defendant's denial, Plaintiff must discover the identities of individuals with access to Defendant's internet.

*See* Doc. 36 p. 5. There is nothing to support such an application of the discovery process. Plaintiff sued Defendant, and the focus of the discovery must be limited to the Plaintiff's burden—proving the Defendant is the infringer.

Indeed, Plaintiff named Defendant despite knowing full well the subscriber to whom an IP address is assigned may not be the same person who used the Internet connection for illicit purposes.

> [Plaintiff] accuses the Doe Defendant of illegally copying a pornographic video. But the only information [Plaintiff] has is the IP address of the Doe Defendant. An IP address alone may yield subscriber information, but that may only lead to the person paying for the internet service and not necessarily the actual infringer, who may be a family member, roommate, employee, customer, guest, or even a complete stranger.
>
> [T]he Court is reluctant to allow any fishing-expedition discovery when all a plaintiff has is an IP address—the burden is on the plaintiff to find other ways to more precisely identify the accused infringer without causing collateral damage.

---

[7] In a showing of full disclosure, Defendant would note that similarly, his basement is capable of storing hundreds of thousands of Plaintiff's copyrighted works. However, he has yet to receive a request to inspect the premises.

7

*AF Holdings LLC v. Guo*, No. 12-cv-5709, 2012 U.S. Dist. LEXIS 151730, *1-2 (C.D. Cal. Oct. 19, 2012) (*citing Malibu Media LLC v. John Does 1-10*, No. 12-cv-01642, *slip op.* at 4 (C.D. Cal. Oct. 10, 2012)).

Secondly, as Plaintiff already knows:

> [T]he router was not password protected at the time of the alleged infringements. Because the router was not password protected, no authorization was necessary— explicitly or otherwise—to use the router to connect to the Internet.

*See* Ex. A. pp. 10-11.

Therefore, there is simply no way for Defendant to know who accessed the connection or for what purposes.

**B. Production of Defendant's Hard Drive should not be Compelled.**

The real issue before this Court is a controversy about the examination of the Defendant's hard drive.[8]

   **1. Plaintiff's Access to Defendant's Hard Drive is Irrelevant at this Point.**

Understandably, given the nature of its case, Plaintiff wants to examine Defendant's hard drive in an effort to obtain evidence supporting its accusation that Defendant has used peer-to-peer filing sharing to directly infringe the copyrights of their pornography. In fact, that was Plaintiff's sole purpose for requesting the Defendant's hard drive. *See* Doc. 36 p. 10. To that end, Plaintiff chose an aggressive discovery schedule, but chose not to diligently pursue it. *See e.g. Malibu Media v. Siegel*, No. 13-cv-06252, ECF No. 14 (E.D. Pa. Aug. 4, 2014) (attached as Ex. C) (a case whose history tracks with the present matter).

Once the deadline for expert reports passed, and Plaintiff failed to meet it, the need for its access to Defendant's drive became irrelevant.

> Plaintiffs had complaints of their own and, on February 25, 2004, filed a motion to compel production of documents and for discovery sanctions against Defendants. Plaintiffs argued that Defendants engaged in dilatory tactics that resulted in over $75,000 in excess legal expenses as well as Plaintiffs' inability to complete all discovery by the February 28, 2004, deadline. At the same time, Plaintiffs filed a motion to amend the scheduling order to extend both the upcoming deadline for discovery as well as the deadline, by then in the past, for finalizing the witness list. Plaintiffs also moved to take additional depositions.

---

[8] To the extent Plaintiff seeks all the hard drives within Defendant's home, regardless of ownership [Doc. 36 p. 12], Plaintiff has repeatedly been made aware of the frivolity of this argument. *See e.g. Malibu Media v. Roldan*, No. 13-cv-03007, ECF No. 70 (M.D. Fla. March 26, 2015).

8

> The magistrate judge resolved the discovery disputes in an April 22, 2004, opinion and order that ***denied*** Plaintiffs' requests for additional discovery and sanctions and granted Defendants' motion to strike Plaintiffs' untimely witness list. The magistrate judge found that the Plaintiffs had not shown good cause for failing to meet the discovery deadlines. For example, the Plaintiffs conceded that they did not attempt to contact five of the six new expert witnesses until shortly before the witness-list deadline, and, although they were aware of the sixth expert well before the deadline, they chose not to disclose his identity until they filed their ten-day-late list.

*Grain v. Trinity Health,* 431 Fed. App'x. 434, 438 (6th Cir. 2011).

### 2. Despite Plaintiff's Bon Fides, It's Proposed Protective Order is not Reasonable.

Even if the Court were to reopen discovery, the protective order contemplated by Plaintiff is invasive and lacks adequate safeguards, among other problems. In truth, Defendant would welcome the opportunity to definitively demonstrate that he did not infringe Plaintiff's works, and knows that a forensic examination of his computer's hard drive would bear witness to that fact.

Nonetheless, Defendant's computer hard drive is the repository of myriad documents and records that are of a private and confidential nature. These include (or may include): records regarding Defendant's client's data; social security numbers and drivers license data; purchasing habits and credit histories; income and financial transactions; medical records; passwords; and private communications never intended to be revealed to third persons. Moreover, Defendant understandably distrusts the Plaintiff who wants to subject his confidential information to such exacting scrutiny. Defendant does not have the resources to monitor Plaintiff or its agents and hold them accountable should they violate the protective order. Instead, Defendant would have to essentially *trust* them. Yet Plaintiff has already demonstrated it is not worthy of such trust.

In *Shekoski*, the Court ordered Plaintiff:

> If the forensic examination does not reveal evidence of the copyright infringement alleged in the complaint, and if there is no evidence that infringing files have been deleted, Malibu Media will dismiss its claims against the Defendant.

*Malibu Media v. Shekoski*, No. 13-cv-12217, ECF No. 21 (E.D. Mich. July 21, 2014) (attached as Ex. D).

Yet two months later, Defendant was forced to seek leave to dismiss when it discovered:

> On September 11, 2014, Plaintiff's counsel, by omission, made Defendant's counsel aware that the forensic examination of Defendant's hard drive had not revealed evidence of the copyright infringement alleged in the complaint, and had not revealed any evidence that the infringing files had been deleted. However, instead of directly confessing the same, Plaintiff's counsel stated that Plaintiff's expert had found

9

evidence of unrelated possible copyright infringement of a completely different than that at issue in this case.

*Id.*, ECF No. 22 ¶ 4. *See also* ECF No. 27 (order granting leave to file for dismissal & for attorney's fees).

Moreover, the protective order proposed by Plaintiff would require an onerous process given Defendant's limited financial means of individually designating each document subject to privilege. This would leave Defendant in the unenviable position of examining, or having his attorney examine, every item on his hard drive, designate it with some identifier, and then classify it. Moreover, the parties would thereafter be free to follow another procedure to challenge confidentiality level assigned by the other party to a document. The cost of going through that process, by itself, would engender defense costs far in excess of what Plaintiff could hope to recover at trial.

Should the Court decide to re-open discovery, it is far simpler instead to limit Plaintiff's examination to:

  i. The digital movie files identified in Exhibit A found on the hard drive and any evidence of file-sharing related to said files; and

  ii. As appropriate, any evidence that the computer's hard drive has been "wiped" or erased since the initiation of this litigation.

**3. Plaintiff's Reply Fails to Address the Propriety of its Request.**

Even if a proper request for Defendant's hard drive had been made, Plaintiff continues to not state a basis for unfettered access to the hard drive. Plaintiff was repeatedly informed Defendant is an application developer and his hard drive contains numerous confidential client files as well as files unrelated to Plaintiff's claims. *See e.g.* Doc. 27-3. Nonetheless, Plaintiff seeks "production of Defendant's hard drive as a whole and in its entirety." [*id.*] despite notice that such access required some discrepancy in Defendant's discovery responses [*id.*].

> [T]o gain direct access to the respondent's databases [hard drives], the court must make a factual finding of some non-compliance with discovery rules and protect respondent with respect to preservation of his records.

*Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. 06-cv-899, 2007 U.S. Dist. LEXIS 43005, *10 (S.D. Ohio June 12, 2007). *See also, John B. v. Goetz*, 531 F.3d 448, 459-60 (6th Cir. 2008).

> Generally, courts are reluctant to compel forensic imaging, largely due to the risk that the imaging will improperly expose privileged and confidential material contained on the hard drive … When a requesting party demonstrates either discrepancies in a

> response to a discovery request or the responding party's failure to produce requested information, the scales tip in favor of compelling forensic imaging.

*Bennett v. Martin*, 186 Ohio App. 3d 412, 424-427 (Ohio App. Ct. Nov. 24, 2009).

> As set forth in the Motion and discussed at the hearing, neither Federal Rule of Civil Procedure 34 nor governing Eleventh Circuit authority permit unrestricted access to a party's database compilations and/or computer hard drives. That is particularly true, where, as here, Plaintiff sought access to all computer devices in the home of Angel and Gladys Roldan, who at the time were both non-parties.

*Malibu Media v. Roldan*, No. 13-cv-03007, ECF No. 70 (M.D. Fla. March 26, 2015) (attached as Ex. E).

Plaintiff's Reply still has identified no such discrepancies to warrant such access. *Goetz*, 531 F.3d at 457-58 ("[T]he mere imaging of the media, in and of itself, raises privacy and confidentiality concerns. Duplication, by its very nature, increases the risk of improper exposure, whether purposeful or inadvertent. … This duplication implicates significant privacy and confidentiality interests-regardless of whether the imaged media are initially held under seal-and these interests cannot be fully protected *ex post*. For these reasons, the second mandamus factor weighs in favor of granting the writ.").

Indeed, the principal issue in this case centers instead on concerns for Defendant's privacy, especially where "the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature." *Balboa Threadworks, Inc. v. Stucky*, No. 05-cv-1157, 2006 U.S. Dist. LEXIS 29265, *3 (D. Kan. Mar. 24, 2006).

> Indeed, [Malibu Media's] vain efforts to agitate are particularly unseemly in light of our repeated rulings affording plaintiff wide latitude in its discovery. We find unsettling the gulf between Malibu Media's claims in this summary judgment motion and the actual evidence—or, more to the point, the lack thereof—its expert unearthed after extensive searches. And we find merit in the skepticism with which other district courts have greeted Malibu Media's discovery motions and subpoena requests in similar matters.

*Malibu Media v. Doe*, No. 14-cv-1280, ECF No. 40 (E.D. Pa. Feb. 2, 2015) ("Nor are we impressed by [Malibu's] histronics over the alleged spoliation.") (attached as Ex. F).

### 3. Plaintiff Identifies No Violations of Fed.R.Civ.P. 26 for Defendant's Protective Orders.

Plaintiff takes umbrage to the protective orders proposed by the Defendant, identifying language it terms "unreasonable, unsupported by any case law, and violates the Federal Rules of

11

Civil Procedure"; "clear violations of Fed.R.Civ.P. 26 (b)(4)(B)-(C)"; and "self-serving, unnecessary, and these demands alone demonstrate Defense counsel's delay tactics." *See* Doc. 28, p. 5.

Defendant's first draft [Doc. 28-3] was premised upon an order entered in *Capitol Records, Inc. v. Alaujan*—a case cited by the Plaintiff in its "letter of deficiencies" to the Defendant. *See* Doc. 28-2, p. 2; *Capitol Records, Inc. v. Alaujan*, No. 03-cv-11661, 2009 U.S. Dist. LEXIS 110626 (D. Mass. May 6, 2009). Defendant's second and most recent draft incorporates edits from the Plaintiff.

Plaintiff contests the following language:

> Second Proposed Protective Order demands that Plaintiff's pay its Expert, Patrick Paige ("Mr. Paige"), to produce a Draft Expert Report *for Defendant* (rather than for Plaintiff), along with the production of privileged communication between Plaintiff and its Expert.

*See* Doc. 36 p. 2.

> Defendant further demanded that Defendant be the only party privy to the Draft Expert Report until all issues regarding privilege are resolved.

*Id.*

Defendant directs the Court's attention to *Easton Sports, Inc.*

> Plaintiffs shall select and pay an expert who will inspect the computers in question to create a 'mirror image' or 'snap shot' the hard drives. … The expert shall then use his or her expertise to recover from the 'mirror image' roldanof the hard drive of each computer, and to provide in any reasonably convenient form to Defendants' counsel, all available word processing documents, electronic mail messages, PowerPoint or similar presentations, spreadsheets, and other files.
>
> After receiving these records from the expert, Defendants' counsel shall then have to review these records for privilege and responsiveness to Plaintiff's discovery requests, and shall then supplement Defendants' response to discovery requests as appropriate.

*Easton Sports, Inc. v. Warrior Lacrosse, Inc.*, No. 05-cv-72031, 2005 U.S. Dist. LEXIS 37051, *3 (S.D. Mich. Sept. 14, 2005) (Doc. 30-4). *See also,* Doc. 30-3, pp.13-16.

> Defendant is to provide a mirror image of the hard drive at issue to Malibu Media, at Malibu's expense …
>
> The protective order will specify the material that Malibu's forensic expert is looking for; anything else on the hard drive is off limits for discovery purposes.

*See* Ex. D.

Defendant's counsel therefore takes solace in knowing that at least two federal judges share in his "deep[ly] rooted misunderstanding" of how "a proper forensic analysis of a computer hard drive is conducted" when drafting protective orders. *See* Doc. 28, p. 3.

**C. This Court should Deny Plaintiff's Request for Fees and Costs.**

Before filing a motion to compel, the movant must exhaust all extrajudicial means to resolve the discovery disputes at issue. *See* S.D. Ohio Local Rule 37.1; *Smith v. General Mills, Inc.*, No. 04-cv-705, 2006 U.S. Dist. LEXIS 25902, *7 (S.D. Ohio May 3, 2006) ("Only if attempts at resolution fail, and the parties are truly at impasse, is it appropriate to file a motion to compel …"). Local Rule 37.2 requires the movant to certify that it, in fact, made such extrajudicial attempts. *See* S.D. Ohio Local Rule 37.2. Such extrajudicial attempts must be made in good faith. *See* Fed.R.Civ.P. 37(a).

A good faith effort typically includes both written and telephonic attempts to reach and confer with the other party, and certainly requires an actual discussion about the issues. The failure to confer, alone, is sufficient to deny a motion to compel. *General Mills, Inc.*, 2006 U.S. Dist. LEXIS, *7; *Watson v. Citi Corp.*, No. 07-cv-0777-TPK, 2008 U.S. Dist. LEXIS 64424 (S.D. Ohio Aug. 19, 2008).

First, Plaintiff contends "undersigned contacted defense counsel through various e-mails and telephone conferences in an effort to resolve the foregoing issues." *See* Doc. 36 p. 14. Given that undersigned's position has always been that Plaintiff's counsel will not speak to him on the phone[9], it is unclear what "various telephone conferences" the parties were to have taken part in. There has only ever been one phone call with regards to Defendant's discovery obligations and that was on February 10, 2015.[10]

With regard to the similarly situated "various emails", Plaintiff's efforts prior to filing the Motion consisted of one letter sent on February 5, 2015—a letter to which Defendant sent a reply addressing the particular issues therein; and two emails prior to the expert report discovery deadline passing. Plaintiff made no further efforts.

---

[9] Plaintiff likewise acknowledges its reluctance to speak to Defendant. "[T]o avoid any intentional or inadvertent miscommunication, undersigned has made it a point to confer with Defendant's attorney only in writing to avoid repeated miscommunications." *Malibu Media v. Doe*, No. 14-cv-493, ECF No. 28 p. 7 (S.D. Ohio March 18, 2015).

[10] "Counsel's willingness to shift positions depending on the argument of the moment gave his contentions an undesirable *Alice in Wonderland* quality as various facts faded in and out of view like the Cheshire Cat's grin. Needless to say, … this litigation tactic did not advance his … cause and diminished counsel's credibility with the court." *United States CFTC v. Lake Shore Asset Mgmt.*, 540 F.Supp.2d 994, 1008 (N.D. Ill. 2008).

Not only did Plaintiff fail to make legitimate attempts, it misstates (to put it charitably) Defendant's position. Defendant has never asked for a Draft Report. This phrase appears in neither any email communications with opposing counsel nor any of Defendant's proposed protective orders. Nonetheless, Plaintiff has spilled considerable ink asserting Defendant has, without any factual basis for doing so.[11] *See* Doc. 36 p. 11. What Defendant did request was for the expert's final report to initially be produced only to the Defendant's counsel so that it could be reviewed for privilege issues prior to being disclosed to the Plaintiff. *See* Doc. 36-4 p. 2.

Likewise, Defendant has never requested privileged communications between Plaintiff and its expert. *See* Doc. 36 p. 13. Rather, Defendant requested was copies of all guidance and direction related to the inspection that the expert receives from the Plaintiff or its counsel shall be attached as an appendix to the final report. *See* Doc. 36-4 p. 2. Not only is this common practice, it is prudent given Plaintiff's indiscretions.

> At Malibu Media's behest, he also examined the hard drive for evidence of third parties' works and found a single work belonging to another entity.

*Malibu Media v. Doe*, No. 14-cv-01280, ECF No. 70 (E.D. Pa. Feb. 15, 2015) (done after Plaintiff was told any alleged infringements of third-party content is off limits for discovery purposes in a related matter).

Such conduct does not merit an award of costs; it merits the imposition of such costs against Plaintiff.

### IV. CONCLUSION

Defendant has diligently pursued discovery to the extent necessary to defend against the allegations raised by Plaintiff. Plaintiff did not even raise the possibility of oral discovery until April, with less than two weeks before the close of discovery. Moreover, much of the written discovery requests made by Plaintiff are overly broad, unduly burdensome, and seek information regarding individuals who have no bearing on the claims or defenses being asserted.

Had Plaintiff wanted to obtain this information it seeks to compel, Plaintiff was under an obligation to timely pursue discovery and diligently attempt to prosecute its claims. It has failed to do so. Defendant should not be penalized for Plaintiff's failure to act in a timely manner.

---

[11] What Defendant did request was for the expert's final report to initially be produced only to the Defendant's counsel so that it could be reviewed for privilege issues prior to being disclosed to the Plaintiff. *See* Doc. 36-4 p. 2.

14

He now requires closure for this matter.

Dated: May 4, 2015

Respectfully,
/s/ Jason E. Sweet
BBO# 668596

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8602
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

## CERTIFICATE OF SERVICE

I hereby certify that on this May 4, 2015 I filed the foregoing document and my supporting affidavit through the Court's CM/ECF system, which will serve the documents on all counsel of record who have consented to electronic service.

/s/ Jason E. Sweet